UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROCHELLE PARPART,

                              Plaintiff,

                                                    CIVIL CASE NO. 03-40139

v.

GENERAL MOTORS CORPORATION,         HONORABLE PAUL V. GADOLA
                                                       U.S. DISTRICT COURT
                              Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, filed on August 30, 2005. For the following reasons, the Court will grant Defendant's motion.

**I.    Background**

On April 2, 1999, Plaintiff was hired and, at all relevant times, was employed by Engineering Laboratories, Inc. ("ELI"), an employee leasing company. Plaintiff was leased to General Motors Corporation ("GM") from approximately May 19, 1999 through the time she abruptly left on July 15, 2002. Plaintiff was originally assigned to GM's audit division where she worked on database development and performed other computer duties. However, in February 2000, she was offered and accepted a position in GM's Corporate Roofing Program. There, Plaintiff set up various accounts for payment. Upon Plaintiff's transfer to the Roofing Program, she had access to both her direct supervisor Michael Colpus and to his direct supervisor Robert Behrens to address any workplace problems. Likewise, ELI had its own hierarchy that was available to handle any workplace problems that might arise. ELI employees were informed that if they were uncomfortable

with any situation in their contractual assignment they should contact either the owner of ELI, Chuck Meldrum, ELI business manager Diana Curtis, or a ELI liaison.

Plaintiff alleges that she left her position at GM on medical leave because of the number of inappropriate sexual comments and acts directed towards her by her supervisor Michael Colpus, and other non GM employees. Plaintiff asserts, among other things, that she was inappropriately touched on her breast while riding to work with a former Building Technologies Associates ("BTA") employee who was also contracted to work for GM, that she was asked by another BTA employee if her breasts were real, that she was once asked to give Colpus a hug because he was having a bad day, that she was touched on the shoulder by another GM employee, and that she was told she "looked hot" and that she should wear skirts more often because she had "great legs." Moreover, Plaintiff alleges that she was forced to listen to Colpus describe how many times a month he used Viagra, a common prescription for erectile dysfunction. Also, she alleges that once, when Colpus was out of the office, he phoned her and directed her to look for a file in his desk drawer knowing that the drawer also contained pornographic magazines. Later he called to ask what she had found in his desk drawer.

Although Plaintiff had been off work since July 15, 2002 on medical leave, a doctor cleared her to return to work in January 2003. Yet, because Plaintiff's departure from her position was abrupt and her return uncertain, ELI replaced her in the Roofing Program with another ELI employee. When Defendant learned that Plaintiff had been given medical clearance to return to work, it offered to circulate Plaintiff's resume to other departments. Unfortunately, there were no other available IT positions within GM, and because ELI had no other clients that required Plaintiff's services, ELI was forced to lay her off.

Plaintiff brings this action against Defendant alleging sexual harassment, quid pro quo discrimination and retaliation under Title VII of the Civil Rights Act of 1964, as amended in 42 U.S.C. § 2000 *et. seq.* More specifically, Plaintiff alleges that unwelcome sexual advances and conduct by her supervisor, Colpus, constitute quid pro quo sexual harassment and that the acts of other individuals employed by GM render GM vicariously liable for their actions. Defendant denies that it can be held vicariously liable under the facts of this case and that the Court should grant it judgment as a matter of law.

## II.     Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Martin v. Ohio Turnpike Comm'n*, 968 F.2d 606, 608 (6th Cir. 1992); *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987); *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984); *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993); *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995); *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F. Supp. 214, 217 (E.D. Mich. 1990) (Gadola, J.), *aff'd*, 929 F.2d 701 (6th Cir. 1991).

## III.     Analysis

Title VII forbids an employer to "fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions,

or privileges of employment, because of an individuals . . . sex." 42 U.S.C. § 2000e-2(a)(1). Although the terms "quid pro quo" and "hostile work environment" cannot be found in the text of the statute, the Supreme Court has held that are both theories are cognizable under Title VII. *See Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 752 (1998). The Supreme Court distinguished the two terms by holding that quid pro quo harassment required an employer to follow through on its threats whereas a hostile working environment is "bothersome attentions or sexual remarks that are sufficiently severe or pervasive . . . ." *Id.* at 751. Yet, because the Supreme Court held that "the labels quid pro quo and hostile work environment are not controlling for purposes of establishing employer liability," the issue in this case is not whether there was a quid pro quo or a hostile working environment, but whether, under the specific facts of this case, GM can be held vicariously liable to Plaintiff for the alleged acts of her direct supervisor and other non GM employees. *Id.* at 753 (". . . but the issue of real concern to the parties is whether [the defendant] has vicarious liability for [the supervisor's] alleged misconduct.").

"An employer may be liable for both negligent and intentional torts committed by an employee within the scope of his or her employment. Sexual harassment under Title VII presupposes intentional conduct." *Id.* at 756. However, the Supreme Court stated that "a supervisor acting out of gender-based animus or a desire to fulfill sexual urges may not be actuated by a purpose to serve the employer." *Id.* The Court further stated that "[t]he harassing supervisor often acts for personal motives, motives unrelated and even antithetical to the objectives of the employer" and that "[t]he general rule is that sexual harassment by a supervisor is not conduct within the scope of employment." *Id.* at 757. Although an employer may escape vicarious liability if a supervisor acts outside his scope of employment, it may still be held liable when a supervisor takes a tangible

4

employment action against the subordinate. *Id.* at 761. "A tangible employment action taken by a supervisor becomes for Title VII purposes the act of the employer." *Id.* at 762. "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id..* at 761. Therefore, if a tangible employment action is taken by an employer, it can be held vicariously liable. It follows then that, if no tangible employment action is taken, an employer may raise an affirmative defense to a vicarious liability charge. The Supreme Court has described such a defense in *Burlington Industries.* The Supreme Court stated:

> The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. While proof that an employer had promulgated an antiharassment policy with complaint procedure is not necessary in every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case when litigating the first element of the defense. And while proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing any unreasonable failure to use any complaint procedure provided by the employer, a demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of the defense.

*Id..* at 765. Relying on the Supreme Court's holding in *Burlington Industries, Inc.,* the Court finds that Defendant is not vicariously liable to Plaintiff: no tangible employment action was taken against Plaintiff. First, Plaintiff left her position on her own volition. Second, Defendant circulated her resume to other departments within the company in an attempt to secure employment for her after it learned she was cleared to return to work. Lastly, it was ELI not GM that laid Plaintiff off. Furthermore, when both prongs of the affirmative defense test are applied to the facts of this case, the Court finds that Defendant had taken reasonable care to prevent and correct this type of behavior.

Defendant posted its harassment policy and complaint procedure throughout the facility, reviewed the policy with employees at least annually, offered periodic hour-long classes on the matter–which Plaintiff attended, swiftly investigated the specific complaints of this case once they were made known, reviewed the policy once again with the relevant employees, and notified Plaintiff's employer ELI as soon as possible.  Additionally, this Court finds that Plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided to her.  Plaintiff did not notify anyone until long after the alleged events occurred, yet the record indicates the she was in frequent contact with ELI's liaisons and Business Manager.  Likewise, she apparently had unfettered access to supervisors at GM.

Regarding Plaintiff's retaliation claim, "the Plaintiff has the burden of proving beyond a preponderance of the evidence a prima facie case of discrimination."  *Equal Employment opportunity Commission v. Avery Dennison Corporation,* 104 F.3d 858, 862 (6th Cir. 1997).

> In order to find a prima facie case of retaliation under Title VII a plaintiff must prove by a preponderance of the evidence : 1) plaintiff engaged in activity protected by Title VII; 2) plaintiff exercise of civil rights was known by the defendant; 3) that, thereafter, the defendant took an employment action adverse to plaintiff; and 4) that there was a causal connection between the protected activity and the adverse employment action.

*Id..* at 860.  While establishing a prima facie case is not the end of the inquiry, it must first be established before a court may continue its analysis.  As stated prior, the Court finds that Plaintiff did not suffer a tangible or adverse employment action.  Therefore, Plaintiff has not established the third prong and has failed to form a prima facie case of retaliation.  Consequently, no further analysis is necessary.

**ACCORDINGLY, IT IS HEREBY ORDERED** that Defendant's motion for summary judgment [docket entry 22] is **GRANTED.**

**SO ORDERED.**


Dated:   March 29, 2006                              s/Paul V. Gadola
                                                     HONORABLE PAUL V. GADOLA
                                                     UNITED STATES DISTRICT JUDGE


Certificate of Service

I hereby certify that on   March 30, 2006  , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:           Kay R. Butler; Ann Curry Thompson                           , and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:                                                            .

                                                     s/Ruth A. Brissaud
                                                     Ruth A. Brissaud, Case Manager
                                                     (810) 341-7845